# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 2900 | DATE | AUG. 9, 2001 |
| CASE TITLE | BRUCE GILMORE, etc. v. SOUTHWESTERN BELL MOBILE SYSTEMS, INC., etc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for **SEPTEMBER 19, 2001 at 11:00 a.m.**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for remand [4-1] is denied. Defendant's motion to dismiss [3-1] is denied without prejudice. By August 27, 2001, plaintiff shall file his amended complaint. By September 12, 2001, defendant shall answer or otherwise plead to the amended complaint. By September 5, 2001, plaintiff shall move for class certification.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 4 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 8/10/01 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 AUG -9 PM 5:45 | AUGUST 9, 2001 date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | MQM mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRUCE GILMORE, individually and )
on behalf of all other people )
similarly situated, )
)
        Plaintiff, )
)
v. ) No. 01 C 2900
)
SOUTHWESTERN BELL MOBILE )
SYSTEMS, INC., d/b/a )
Cellular One of Illinois, )
)
        Defendant. )

DOCKETED
AUG 1 0 2001

## MEMORANDUM OPINION AND ORDER

Named plaintiff Bruce Gilmore filed this putative class action in the Circuit Court of Cook County, Illinois. Defendant Southwestern Bell Mobile Systems, Inc.[1] d/b/a as Cellular One of Illinois removed the case to federal court contending that plaintiff's claims were completely preempted by federal law and therefore necessarily stated a basis for federal jurisdiction. Plaintiff has moved to remand the case to state court and defendant has moved to dismiss plaintiff's cause of action.

According to the allegations of the complaint, plaintiff is a resident of Illinois and defendant is a Delaware

---

[1]Defendant represents that its correct corporate name is Southwestern Bell Mobile Systems, L.L.C. Absent an amendment of the complaint or a motion to substitute the party, this court will use the name alleged in the complaint.

corporation. There is no allegation as to defendant's principal place of business, but defendant does not dispute plaintiff's statement that the requirements for diversity jurisdiction are not satisfied. Named plaintiff's individual claim apparently would be less than the jurisdictional amount for diversity and it may be that defendant's principal place of business is located in Illinois. Therefore, removal would only be appropriate if one or more of plaintiff's claims involve a federal question.

Plaintiff alleges that he has been a cellular telephone customer of defendant since before 1995. He further alleges that he has a contract under which he agrees to pay certain rates for his cellular telephone service. "Nowhere in the Contract or elsewhere did Plaintiff agree to pay higher rates for cellular service or to pay additional fees for which no significant additional goods or services were rendered." Plaintiff alleges that applicable taxes are the only appropriate additional charges. In 1995, defendant began charging a monthly "Corporate Account Administration Fee" (hereinafter the "Fee").[2] No significant administrative or other services are provided for the Fee and the monthly bills do not explain what services, if any, are provided for the Fee nor has it been specifically identified as a rate increase. Plaintiff alleges that the Fee was imposed "for the sole purpose of enabling [defendant] to generate more

---

[2]In response to the motion to dismiss, plaintiff represents that the Fee started at $1.50 per month and was later raised to $2.95 per month.

revenue without appearing to raise its rates for cellular service." It is further alleged that plaintiff and the class "have been deceived into paying a fee for which they receive no significant goods or services. Plaintiff and the Class also have been deceived, in effect, into paying for cellular service at rates higher than the rates for which they contracted."

The putative class identified in the complaint is "all persons with Illinois billing addresses who have subscribed to cellular telephone services provided by Defendant since 1995 . . . and from whom Defendant has collected a Corporate Account Administrative Fee." The complaint contains four counts, all of which are denominated as state law claims. Count I is a claim for breach of contract in which it is contended that the Fee is not permitted under the parties' alleged contract. Count II is a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, in which it is claimed that defendant used deception in charging the Fee by misrepresenting its true nature. Count III charges the same alleged misrepresentations as common law fraud. Count IV charges the alleged practice as unjust enrichment.

Defendant contends that plaintiff is challenging the rates it charges and therefore all of plaintiff's claims are preempted by the Federal Communications Act ("FCA"), specifically 47 U.S.C. § 332(c)(3). Defendant further contends that the FCA has so completely preempted the field that any challenge to rates is necessarily a federal claim. Plaintiff contends he is not

challenging rates. Alternatively, he contends that his particular rate challenges are not preempted or that the field is not so completely preempted that any challenge to rates is necessarily a federal claim. Assuming there is federal jurisdiction, defendant moves to dismiss all the claims because they are preempted or, alternatively, because the FCC has primary jurisdiction. Alternatively, defendant contends Counts II and III do not satisfy the pleading requirements of Fed. R. Civ. P. 9(b) and Count IV should be dismissed because unjust enrichment does not apply when there is a contract.

Preemption is a defense. That a claim is preempted by federal law is not a sufficient basis for invoking federal question jurisdiction. Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987). Preemption can only be a basis for federal question jurisdiction if there is complete preemption, i.e. "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" Id. (quoting Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 65 (1987)). A plaintiff is the master of his complaint; he may choose to bring state law claims only even if a federal claim is available. See Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 809 n.6 (1986).

As to cellular telephone services,[3] the FCA provides:

>   Notwithstanding sections 152(b) and 221(b) of this title, no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services. Nothing in this subparagraph shall exempt providers of commercial mobile services (where such services are a substitute for land line telephone exchange service for a substantial portion of the communications within such State) from requirements imposed by a State commission on all providers of telecommunications services necessary to ensure the universal availability of telecommunications service at affordable rates. Notwithstanding the first sentence of this subparagraph, a State may petition the Commission for authority to regulate the rates for any commercial mobile service . . . .

47 U.S.C. § 332(c)(3)(A).

The FCA also contains a savings clause:

>   Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

Id. § 414.

The Seventh Circuit has considered the interplay between these two statutory provisions and the complete preemption doctrine.

>   At first blush, the savings clause appears to encompass most actions, but it is well

---

[3]Cellular telephone services fall within the FCA's definition of "mobile service." See 47 U.S.C. § 153(27); GTE Mobilnet of Ohio v. Johnson, 111 F.3d 469, 472 (6th Cir. 1997).

established that such cannot be true.  To read
the clause expansively would abrogate the very
federal regulation of mobile telephone providers
that the act intended to create.  See AT&T Co. v.
Central Office Telephone, Inc., 524 U.S. 214, 228
(1998) ("[T]he act cannot be held to destroy
itself.") (citation omitted); Cahnmann v. Sprint
Corp., 133 F.3d 484, 488 (7th Cir. 1998).
Therefore, we have read the savings clause
narrowly to avoid swallowing the rule, but not so
narrowly as to render it a dead letter.  Although
most complaints will involve rates or other
issues specially reserved to federal control, we
have recognized before that some claims do not
and may be addressed in state court.  See
Cahnmann, 133 F.3d at 488 (citing In re Long
Distance Telecommunications Litig., 831 F.2d 627,
633-34 (6th Cir. 1987)).

The two clauses read together create separate
spheres of responsibility, one exclusively federal and
the other allowing concurrent state and federal
regulation.  Cases that involve "the entry of or the
rates charged by any commercial mobile service or any
private mobile service" are the province of federal
regulators and courts.  47 U.S.C. § 332(c)(3)(A).  The
states remain free to regulate "other terms and
conditions" of mobile telephone service.  Id.  The
district court aptly characterized the phrase "other
terms and conditions" as "somewhat enigmatic," and we
agree, but the court's review of the legislative history
regarding the meaning of this phrase was unnecessary and
not particularly authoritative since it reflected only
the views of one chamber of Congress.  See Board of Trade
v. SEC, 187 F.3d 713, 720 (7th Cir. 1999) ("Legislative
history is problematic under the best circumstances, and
even so reliable a source as the Conference Committee
Report may be used only when there is a genuine ambiguity
in the statute.").

Furthermore, this case does not demand so nuanced
a study of the phrase "other terms and conditions"
because the meaning of "entry of or the rates charged by
any commercial mobile service" adequately resolves the
issue here.  In practice, most consumer complaints will
involve the rates charged by telephone companies or their
quality of service.  See Central Office Telephone, 524
U.S. at 223 ("Any claim for excessive rates can be
couched as a claim for inadequate services and vice
versa.").  As the Supreme Court recognized in Central
Office Telephone, a complaint that service quality is
poor is really an attack on the rates charged for the
service and may be treated as a federal case regardless

of whether the issue was framed in terms of state law.
Id. In addition to rates and service, federal
regulations expressly dictate the terms under which a
provider may enter a new market. The act makes the FCC
responsible for determining the number, placement and
operation of the cellular towers and other
infrastructure. . . . Congress has expressed its
decision that these areas be reserved exclusively for
federal adjudication . . . .

Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983, 987-88 (7th Cir. 2000).

Plaintiff contends that the statements in Bastien regarding rates are all dictum because that case only involved market entry issues. That, however, is a misreading of Bastien. Bastien's complaint centered on there being an allegedly high rate of dropped calls, that is cellular calls that could not be connected or that were cut off in the middle of the call. He complained that AT&T Wireless obtained customers by misrepresenting that it had an adequate infrastructure and that the inadequate infrastructure was a breach of his contract with AT&T Wireless. He also complained that AT&T Wireless failed to adequately credit customers for dropped calls. See id. at 985. The Seventh Circuit found that "Bastien's complaint would directly alter the federal regulation of tower construction, location and coverage, quality of service and hence rates for service. . . . Should the state court vindicate Bastien's claim, the relief granted would necessarily force AT&T Wireless to do more than required by the FCC: to provide more towers, clearer signals or lower rates. The statute specifically insulates these

FCC decisions from state court review." Id. at 989 (emphasis added). It did not matter that Bastien attempted to cast his claims as state law contract and fraud claims; they were still challenges to the FCC approved plan. Id. The Seventh Circuit concluded: "Bastien's complaint, although fashioned in terms of state law actions, actually challenges the rates and level of service offered by AT&T Wireless, an area specifically reserved to federal regulation." Id. at 990 (emphasis added).

It is true that a challenge to either rates or market entry would have been a sufficient basis for finding federal jurisdiction over Bastien's claims. See id. at 987 ("The issue is whether Bastien's complaint, however denominated, actually challenges AT&T Wireless's rates or market entry."). The Seventh Circuit, though, did not hold that jurisdiction was based on a challenge to market entry and alternatively hold, without discussion or consideration of the facts, that it could also be based on a challenge to rates. The rate issue did not receive significantly less discussion and consideration than the market entry issue; the Seventh Circuit discussed and considered that jurisdiction existed on both grounds. The Seventh Circuit's statement that § 332(c)(3) "completely preempted the regulation of rates and market entry, although the savings clause continues to allow claims that do not touch on the areas of rates or market entry," id. (emphasis added), is a holding, not dictum. See Whetsel v. Network Property Services, LLC, 246 F.3d 897, 903 (7th

Cir. 2001); United States v. Crawley, 837 F.2d 291, 292-93 (7th Cir. 1988).

Plaintiff argues that, even if state law based rate challenges are preempted by the FCA, there is no complete preemption supporting federal jurisdiction because the FCA does not provide an adequate civil enforcement mechanism for raising rate issues. See Sanderson, Thompson, Ratledge & Zimny v. AWACS, Inc., 958 F. Supp. 947, 957-58 (D. Del. 1997). However, for there to be complete preemption, the federal enforcement provision need not provide as extensive a remedy as may be available under state law. See Caterpillar, 482 U.S. at 391 n.4; Lister v. Stark, 890 F.2d 941, 946 (7th Cir. 1989), cert. denied, 498 U.S. 1011 (1990); McQuerry v. American Medical Systems, Inc., 899 F. Supp. 366, 370 n.3 (N.D. Ill. 1995); Goldstein v. W.L. Gore & Associates, Inc., 887 F. Supp. 168, 171 (N.D. Ill. 1995). The FCA provides a remedy and also provides for proceedings before the FCC or in federal court. See 47 U.S.C. §§ 201-08; Bryceland v. AT&T Corp., 122 F. Supp. 2d 703, 707-09 (N.D. Tex. 2000); In re Comcast Cellular Telecommunications Litigation, 949 F. Supp. 1193, 1203-04 (E.D. Pa. 1996). In any event, this court is bound to follow decisions of the Seventh Circuit. Although some other courts have disagreed, see, e.g., Bryceland, 122 F. Supp. 2d at 710 (collecting cases),[4] Bastien holds that rate

---

[4]Bryceland, 122 F. Supp. 2d at 709-10, held complete preemption did not exist because there was not sufficient indicia of a congressional intent to create removal jurisdiction.

regulation of cellular telephone services is completely preempted by the FCA. Bastien will be followed.

As to complete preemption, the issue still remains as to whether plaintiff's claims are properly characterized as challenges to defendant's rates. If so, then such claims are federal claims and this court has removal jurisdiction. In Bastien, 205 F.3d at 987, and Cahnmann, 133 F.3d at 488, the Seventh Circuit approvingly cited the holding in Long Distance Litigation, 831 F.2d at 633-34, that certain claims in that case did not involve rate issues preempted by FCA provisions concerning land line telephone services. Cahnmann described the non-preempted claims of Long Distance Litigation as follows: "A carrier was accused of having represented that its rates were lower than a competitor's without revealing that, unlike the competitor, it charged its customers for their uncompleted calls. This was a claim of simple fraud, and its adjudication did not require determining the validity of a tariff." Cahnmann, 133 F.3d at 488. The key focus, therefore, appears to be on whether the validity of the tariff had to be determined to resolve the claim. Unlike land line telephone services, cellular telephone services are not governed by tariffs. Connecticut Department of Public Utility Control v. FCC, 78 F.3d 842, 846 n.1 (2d Cir. 1996); Digital Communications Network, Inc. v. AT&T Wireless Services, 63 F. Supp. 2d 1194, 1199 (C.D. Cal. 1999). Therefore, the focus would instead be on whether the amount charged being unreasonable, unjust, or otherwise inappropriate needs to be

considered in order to resolve the claim. See 47 U.S.C. § 201(b); Sanderson, 958 F. Supp. at 954-55; In re Comcast, 949 F. Supp. at 1198.

In Sanderson, 958 F. Supp. at 955, it was held that statutory fraud and contract[5] claims based on failing to disclose that the defendant, unlike customary industry practice, charged for noncommunication time[6] did not raise a rate issue that would be preempted. Cases involving similar claims against the same defendant reached the same conclusion. See In re Comcast, 949 F. Supp. at 1199-1200; DeCastro v. AWACS, Inc., 935 F. Supp. 541, 550, appeal dismissed, 940 F. Supp. 692 (D.N.J. 1996). As to claims that the nondisclosure also constituted unjust enrichment and breach of the implied duty of good faith and fair dealing, Sanderson, 958 F. Supp. at 956, found it unclear as to whether the charges themselves were being challenged as unreasonable, unfair, or unjust, but resolved the doubts against finding removal jurisdiction satisfied. In re Comcast, 949 F. Supp. at 1200-01, and DeCastro, 935 F. Supp. at 550-51, however, found that similar claims involved direct challenges to the billing

---

[5]Sanderson does not detail the nature of the contract claim.

[6]Defendant Comcast charged from the moment the send button was pushed instead of when the call was answered, charged for the time spent inputting a personal identification code, and rounded up each call to the next minute. See Sanderson, 958 F. Supp. at 952.

practices and therefore would be preempted by the FCA.[7]  In
Bryceland, the plaintiffs brought claims of breach of contract,
fraud, breach of warranty, and negligent misrepresentation based
on AT&T Wireless allegedly providing a lower quality of service
than had been represented it would provide.  Because the quality
of the service was implicated, the court found that the claims
were all challenges to the rates charged.  122 F. Supp. 2d at
709.  In Brown v. Washington/Baltimore Cellular, Inc., 109
F. Supp. 2d 421, 423 (D. Md. 2000), the court held that a
challenge to the late fees charged by a cellular telephone
service provider was not a challenge to rates subject to
preemption because, "[w]hile rates of service reflect a charge
for the use of cellular phones, late fees are a penalty for
failing to submit timely payment."[8]  The claims contained in
plaintiff's complaint must be considered in light of this case
law and, more importantly, the Seventh Circuit's focus on whether
the appropriateness of the amount charged is necessary to
resolving the claim, as well as the recognition that complaints

---

[7]In re Comcast, 949 F. Supp. at 1204-05, held that the
FCA completely preempted the field and therefore held that the
claims were within federal jurisdiction.  DeCastro, 935 F. Supp.
at 551-55, held Congress did not sufficiently express its intent
to support complete preemption and therefore held that the claims
were not removable, just subject to a preemption defense.

[8]It need not be decided if Brown correctly construes the
meaning of "rates" as used in § 332(c)(3)(A).  Plaintiff does not
allege that the Fee was a charge for something other than
provision of cellular telephone services.

about quality of service generally constitute complaints about the rates charged for the services.

The FCC does not specifically regulate rates for cellular telephone services. Rates are instead left to be determined by market forces, but with 47 U.S.C. § 201(b) prohibiting charges that are unjust or unreasonable. See Bryceland, 122 F. Supp. 2d at 708; In re Comcast, 949 F. Supp. at 1198. The specific contract allegations are as follows:

> 16. According to the terms of its contract with Plaintiff, Defendant agreed to provide cellular telephone service to Plaintiff at the rates set forth in the "Service Charges" section of its monthly bills. Nowhere in the Contract or elsewhere did Plaintiff agree to pay higher rates for cellular service or to pay additional fees for which no significant additional goods or services were rendered. Thus, by imposing and collecting such fees, Defendant has breached its contract.
> 17. Defendant provides no significant additional goods or services in exchange for the Corporate Account Administrative Fees it charges, and thus those Fees are also void and unenforceable for lack of consideration.
> 18. The Fee is also void and unenforceable as a violation of the duty of good faith implicit in every contract.
> 19. The Fee is also unconscionable and, as such, is void and unenforceable on that additional basis.

Plaintiff's contract allegations explicitly raise the issue of whether it received sufficient services in return for the Fee. That is a rate issue. See Central Office Telephone, 524 U.S. at 223; Bastien, 205 F.3d at 988; Bryceland, 122

F. Supp. 2d at 709.[9]  Also, alleging that the Fee is unconscionable and that defendant did not act in good faith are allegations that the Fee is unjust and/or unreasonable. See In re Comcast, 949 F. Supp. at 1200 (duty of good faith claim); DeCastro, 935 F. Supp. at 550 (same). Compare Sanderson, 958 F. Supp. at 956 (same). But even if these express allegations were not in Count I, the claim that plaintiff should not have been required to pay the Fee because he did not agree to pay it is a challenge to the appropriateness of the Fee and therefore a rate challenge that falls within the purview of § 201(b). The focus is on the agreement, not defendant's failure to disclose. Plaintiff is claiming that the Fee defendant charged was not a fee that had been established in the market as the FCA (as interpreted by the FCC) provides. Plaintiff wants instead to pay the amount that had been agreed upon through market mechanisms. As a state law claim, Count I is preempted by the FCA and must be construed as a claim under the FCA that falls within federal jurisdiction and may be litigated in court under 47 U.S.C. § 207.

Although not expressly denominated and distinguished by plaintiff, the statutory and common law fraud allegations contained in Counts II and III each contain two different types of fraud claims, one of which falls within the purview of the FCA

---

[9]The explicit allegations in plaintiff's complaint apparently distinguish Count I from the contract claims considered in Sanderson, 958 F. Supp. at 955; In re Comcast, 949 F. Supp. at 1199-1200; and DeCastro, 935 F. Supp. at 550. Instead, the allegations are closer to those in Bryceland. See Bryceland, 122 F. Supp. 2d at 708-09.

and one which does not. To the extent plaintiff simply claims that defendant added the Fee while attempting to hide the increase in charges (hereinafter the "nondisclosure fraud claim"),[10] that is a claim like the one in Long Distance Litigation. Success on the nondisclosure fraud claim would not require proof that the Fee was unreasonably high or unjustified in light of any new services provided in return. Instead, plaintiff would have to show that deceit or a misrepresentation was used in charging the Fee and that the deceit or misrepresentation was material to plaintiff's decision to continue to subscribe to defendant's services. The Counts II and III nondisclosure fraud claims are not preempted by § 332(c)(3) and are not FCA claims within this court's federal question jurisdiction. See Cahnmann, 133 F.3d at 488; Long Distance Litigation, 831 F.2d at 633-34; Sanderson, 958 F. Supp. at 955; In re Comcast, 949 F. Supp. at 1199-1200; DeCastro, 935 F. Supp. at 550. But see Bryceland, 122 F. Supp. 2d at 709.

Counts II and III also include the allegation that the Fee involved deception or a misrepresentation in that no additional goods or services were received in return for the new Fee (hereinafter the "no-services fraud claim"). The no-services fraud claim would require proof that any services provided in return were not worth the amount of the Fee. As previously

---

[10] It is implied in the complaint that the Fee was made to look like a tax or administrative charge that any cellular service provider would charge in addition to the advertised rate charged for the cellular service.

discussed, that is a rate challenge that falls within the purview
of the FCA. See Central Office Telephone, 524 U.S. at 223;
Bastien, 205 F.3d at 988; Bryceland, 122 F. Supp. 2d at 709. The
no-services fraud claims of Counts II and III fall within this
court's federal jurisdiction and, as state law claims, are
preempted.

The specific allegations of the Count IV unjust
enrichment claims include:

> 34. Defendant has no contractual or other
> legal justification for imposing the Fee on
> Plaintiff and the Class. Defendant provides no
> significant additional administrative or other
> goods or services in exchange for the Fee, and
> Plaintiff and the Class thus receive no benefit
> in return for the payment of such fee.

Count IV necessarily raises the issue of whether
plaintiff received adequate services in return for the Fee. It
also raises the question of whether the Fee was unjust. That is
a rate claim that falls within the purview of the FCA and which,
as a state law claim, is preempted. See Central Office
Telephone, 524 U.S. at 223; Bastien, 205 F.3d at 988; In re
Comcast, 949 F. Supp. at 1200-01; DeCastro, 935 F. Supp. at
550-51. Compare Sanderson, 958 F. Supp. at 956.

Since the contract, unjust enrichment, and no-services
fraud claims fall within the purview of the FCA's complete
preemption, they involved federal questions and removal was
proper. The state law nondisclosure fraud claims are properly
before the court on supplemental jurisdiction. See 28 U.S.C.

§§ 1441(c), 1367; In re Comcast, 949 F. Supp. at 1206. Although certain of the claims are preempted as state law claims, they are still before the court as federal claims; to hold otherwise would be inconsistent with applying complete preemption. Defendant can still raise the issues of whether the allegations state a basis for granting relief pursuant to § 207 of the FCA and whether the no-services fraud claims satisfy the pleading requirements of Fed. R. Civ. P. 9(b). Before addressing those questions, however, plaintiff should amend his complaint to expressly state all but the nondisclosure fraud claims as FCA claims. Also, plaintiff remains the master of his complaint. He may choose to drop the federal claims and pursue only the nondisclosure fraud claims. If that is plaintiff's desire, he should so inform the court by written motion and plaintiff's individual federal cause of action would be dismissed with prejudice and the case would be remanded to state court for further proceedings.

Thus far, it has been determined that the court has jurisdiction over the case. The merits of plaintiff's claims have not yet been considered, other than to hold, consistent with the jurisdictional determination, that certain claims are preempted as state law claims. Where possible, before considering the merits of defendant's Rule 12(b)(6) motion, it should first be determined whether this case is appropriate for class certification. Chavez v. Illinois State Police, 251 F.3d 612, 629-30 (7th Cir. 2001); Mira v. Nuclear Measurements Corp., 107 F.3d 466, 474-75 (7th Cir. 1997); Anderson v. Cornejo, 199

F.R.D. 228, 237 (N.D. Ill. 2000). Unless this case is remanded to state court because plaintiff drops his federal claims, plaintiff shall promptly move for class certification as set forth in today's order.

IT IS THEREFORE ORDERED that plaintiff's motion for remand [4-1] is denied. Defendant's motion to dismiss [3-1] is denied without prejudice. By August 27, 2001, plaintiff shall file his amended complaint. By September 12, 2001, defendant shall answer or otherwise plead to the amended complaint. By September 5, 2001, plaintiff shall move for class certification. Status hearing set for September 19, 2001 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: AUGUST 9, 2001