# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | **WILLIAM T. HART** | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| **CASE NUMBER** | **01 C 2900** | **DATE** | **NOV. 29, 2001** |
| **CASE TITLE** | **BRUCE GILMORE, etc. v. SOUTHWESTERN BELL MOBILE SYSTEMS, L.L.C.** | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's motion for class certification [15-1] is denied. Defendant's motion to dismiss first amended complaint [16-1] is granted in part and denied in part. Counts II and III of the amended complaint are dismissed. Within two weeks, defendant shall answer the remaining allegations of the amended complaint. Any renewed motion for class certification must be filed, with supporting documents, and presented no later than Dec. 20, 2001. All discovery is to be completed by Feb. 26, 2002. Status hearing set for Dec. 20, 2001 at 11:00 a.m.

(11) [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 3 0 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 24 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 11/29/2001 | |
| | | 01 NOV 29 PM 3: 38 | date mailed notice | |
| cw | courtroom deputy's initials | | MQM | |
| | | Date/time received in central Clerk's Office | mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRUCE GILMORE, individually and )
on behalf of all other people )
similarly situated, )
                         )
       Plaintiff, )
                         )
    v. )    No. 01 C 2900
                         )
SOUTHWESTERN BELL MOBILE )
SYSTEMS, L.L.C., a Delaware )
limited liability company, )
                         )
       Defendant. )

DOCKETED
NOV 3 0 2001

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

In this case, named plaintiff Bruce Gilmore alleges, on behalf of himself and a putative class, that defendant Southwestern Bell Mobile Systems, L.L.C.[1] has violated the Federal Communications Act ("FCA") (specifically 47 U.S.C. §§ 201 and 202) by charging an allegedly improper "Corporate Account Administration Fee" for cellular telephone service that it provides. It is also claimed that this conduct violates the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, and constitutes common law fraud under

_____

[1]The original and amended complaint named Southwestern Bell Mobile Systems, Inc. as defendant, but the correct defendant has since been substituted. Defendant formerly did business as Cellular One of Illinois and now does business as Cingular Wireless.

Illinois law. The original complaint in this case was filed in the state courts of Illinois and was denominated as containing only state law claims. Defendant removed the case to federal court and this court previously ruled that most of the claims contained in the original complaint were completely preempted by the FCA and therefore actually federal claims. See <u>Gilmore v. Southwestern Bell Mobile Systems, Inc.</u>, 156 F. Supp. 2d 916, 920-25 (N.D. Ill. 2001) ("<u>Gilmore I</u>"). It was also held that certain state law claims[2] were not preempted and therefore could be before the court on supplemental jurisdiction. See <u>id.</u> at 924-25. The prior ruling resolved the jurisdictional issues, but declined to address questions of whether cognizable claims were stated because questions of class certification should generally be resolved prior to resolving the merits of the claims. See <u>id.</u> at 925-26. Plaintiff was given the opportunity to amend his complaint to expressly state federal and state law claims and defendant has again moved to dismiss all claims. The question of class certification has also been briefed.

Plaintiff alleges the following facts in his amended complaint. Plaintiff has a cellular telephone service contract with defendant that consists of his initial service contract and his subsequent monthly bills. On each monthly bill, the amounts and rates charged for calls are listed in the "Monthly Service Charges" section of the bill. Fees, taxes, and other charges are

---

[2]<u>Gilmore I</u> refers to those claims as "nondisclosure fraud claims."

separately listed on the bill, including an item labeled "Corporate Account Administration Fee" (hereinafter the "Fee"), which first appeared in 1995. "Neither Plaintiff's initial contract nor his monthly bills provide any authorization for imposing the Corporate Account Administration Fee or any explanation of what services, if any, are covered by such Fee." Am. Compl. ¶ 10. It is further alleged that no goods or services are provided for the Fee and, instead, "Defendant added the Fee in 1995 for the deliberate and sole purpose of raising additional revenue without appearing to raise its rates." Id. ¶ 11.

In Count I, plaintiff alleges the FCA is violated because charging an additional and unauthorized fee for which no additional goods or services are provided is an "unjust or unreasonable" charge or practice made unlawful by 47 U.S.C. § 201(b). It is also claimed that plaintiff was deceived into paying an additional fee which he did not owe. See Am. Compl. ¶¶ 14 (incorporating ¶¶ 10-12), 17.[3] Further, it is claimed that 47 U.S.C. § 202(a), which prohibits "unjust or unreasonable discrimination in charges," is violated in that the Fee is only imposed for telephones that have an apparent business purpose.

In Count II, plaintiff alleges the ICFA is violated because the monthly bills falsely represent that the Fee is due.

---

[3]The allegations of fraud and breach of contract are contained in Count I which is labeled as a § 201 claim. As is set forth in § III(A)(2) below, they may be more properly characterized as federal common law claims. In this opinion, these claims will be referred to as the § 201(b) fraud and breach of contract claims.

By making this representation, customers are deceived into paying a fee for which no goods or services are provided. It is further alleged that paying rates that are competitive with other service providers was material to plaintiff's decision to continue to use defendant's service.

In the Count III common law fraud claim, it is alleged:

> 27. By charging the Fee in its monthly bills to Plaintiff and the Class, Defendant has misrepresented and omitted material facts. Specifically, Defendant, by labeling the charge a "Corporate Account Administration Fee" has represented that it is providing additional administrative goods or services to its customers, when in fact no such services are being provided. Furthermore, Defendant's monthly bills omit the material fact that what they label a "Corporate Account Administration Fee" is really a disguised rate increase.
> 28. The Defendant, by certain of its officers, knew that no additional administrative goods or services were being provided to customers, and instead imposed the Fee for the sole purpose of deceiving its customers and obtaining more money for its cellular phone services without appearing to raise its rates.
> 29. Plaintiff paid his bills, including the Fee, in reliance on Defendant's representation, implicit in the label "Corporate Account Administration Fee," that he was receiving additional administrative goods and services rather than being subjected to an unauthorized rate increase.

Am. Compl. ¶¶ 27-29.

## II. CLASS CERTIFICATION

The burden is on named plaintiff to demonstrate that all the requirements for class certification are satisfied. <u>Retired Chicago Police Association v. City of Chicago</u>, 7 F.3d 584, 596

(7th Cir. 1993), <u>cert. denied</u>, 519 U.S. 932 (1996); <u>Rahim v.</u>
<u>Sheahan</u>, 2001 WL 1263493 *9 (N.D. Ill. Oct. 19, 2001);
<u>Anderson v. Cornejo</u>, 199 F.R.D. 228, 238 (N.D. Ill. 2000).
Federal Rule of Civil Procedure 23(a) requires that the following
four prerequisites be satisfied:  "(1) the class is so numerous
that joinder of all members is impracticable, (2) there are
questions of law or fact common to the class, (3) the claims or
defenses of the representative parties are typical of the claims
or defenses of the class, and (4) the representative parties will
fairly and adequately protect the interests of the class."
Failure to meet any one of these requirements precludes
certification of a class.  <u>Retired Chicago Police</u>, 7 F.3d at 596.
If the Rule 23(a) elements are satisfied, plaintiff must also
satisfy one of the subsections of Rule 23(b).

     In ruling on class certification, the court has an
independent duty to scrutinize the appropriateness of class
certification; the court is not limited to arguments made by a
party opposing certification.  <u>In re General Motors Corp. Engine</u>
<u>Interchange Litigation</u>, 594 F.2d 1106, 1134 (7th Cir.), <u>cert.</u>
<u>denied</u>, 444 U.S. 870 (1979); <u>Anderson</u>, 199 F.R.D. at 238.  <u>See</u>
<u>also</u> <u>Szabo v. Bridgeport Machines, Inc.</u>, 249 F.3d 672, 677 (7th
Cir.), <u>cert. denied</u>, 122 S. Ct. 348 (2001).  Additionally, in
determining whether to grant certification, whether a claim will
ultimately be successful is not a consideration.  <u>Rahim</u>, 2001 WL
1263493 at *9-10.  However, that does not mean that the merits of
claims can be completely ignored.  The "boundary between a class

determination and the merits may not always be easily discernible." Retired Chicago Police, 7 F.3d at 598-99 (quoting Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F.2d 890, 895 (7th Cir. 1981), cert. denied, 455 U.S. 1017 (1982)). In order to resolve questions of typicality or whether common questions predominate, it is sometimes necessary to determine the contours of the applicable law. See Szabo, 249 F.3d at 676-77; Retired Chicago Police, 7 F.3d at 598-99 (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982)); Anderson, 199 F.R.D. at 238; Clay v. American Tobacco Co., 188 F.R.D. 483, 489 (S.D. Ill. 1999). Moreover, contrary to plaintiff's contention, factual allegations of the complaint that go to the issue of certification are not automatically assumed to be true as would happen with a Rule 12(b)(6) motion to dismiss. Instead, to the extent necessary for resolving the issue of class certification, the court is to resolve factual issues, as would be true of a Rule 12(b)(1) motion to dismiss on jurisdictional grounds. Szabo, 249 F.3d at 675-77; Rahim, 2001 WL 1263493 at *10. Factual issues may be resolved by hearing evidence. See Szabo, 249 F.3d at 676. However, it is within the court's discretion as to how to resolve factual issues related to class certification. Any rational mode of inquiry will do, including documentary submissions, with or without the precise strictures of summary judgment rules. See Crawford v. United States, 796 F.2d 924, 928-29 (7th Cir. 1986) (method of resolving factual disputes regarding jurisdiction). The documents presently before

the court provide a basis for considering the parties' factual contentions, taking into account that the burden is on plaintiff to establish that the requirements for class certification are satisfied.

In this case, plaintiff seeks to certify a Rule 23(b)(3) class. Plaintiff's proposed class definition is:

> All persons with Illinois billing addresses who have subscribed to cellular telephone services provided by Defendant since 1995 and from whom Defendant has collected a Corporate Account Administration Fee.
> Excluded from the Class are Defendant; any parent, subsidiary, affiliate, or controlled person of Defendant; the officers, directors, agents, servants, or employees of any of the same; and the members of the immediate families of any such person.

## A.  Numerosity

To satisfy numerosity, it is not necessary to determine the exact number of members in the class; a reasonable estimate will suffice. Mungia v. Tony Rizza Oldsmobile, Inc., 2001 WL 1104635 *3 (N.D. Ill. Sept. 19, 2001); Rahim, 2001 WL 1263493 at *12.  The court may rely on commonsense assumptions or reasonable inferences. Steinbrecher v. Oswego Police Officer Dickey, 138 F. Supp. 2d 1103, 1106 (N.D. Ill. 2001); Rahim, 2001 WL 1263493 at *12.  However, a conclusory allegation that joinder is impracticable or speculation as to the size of the class is insufficient. Roe v. Town of Highland, 909 F.2d 1097, 1100 (7th Cir. 1990); Marcial v. Coronet Insurance Co., 880 F.2d 954, 957

(7th Cir. 1989); <u>Mungia</u>, 2001 WL 1104635 at *3; <u>Steinbrecher</u>, 138 F. Supp. 2d at 1106.

Plaintiff asserts, on "information and belief" that the class "numbers in the thousands." The basis for so believing is not stated; it may be little more than speculation. However, defendant raises no issue as to numerosity and does not dispute that the class would number in the thousands. It may be reasonable to assume that defendant, which advertised extensively in the Chicago area (and possibly elsewhere in Illinois), has business accounts that number in the thousands. Both parties, though, presumably consider a class that includes all corporate account customers from 1995 to the present. As is explained in the discussion of typicality, though, plaintiff could only represent those who had existing accounts prior to implementation of the Fee in 1995. Neither party makes any representation regarding how many such accounts existed as of that date.

Although it is likely that numerosity with respect to a modified class of customers can be shown, the present motion is insufficient to establish numerosity of any class.

## B. Commonality

Rule 23(a)(2) commonality "is not a demanding requirement; one issue of fact or law common to all class members will suffice." <u>Anderson</u>, 199 F.R.D. at 239. <u>Accord</u> <u>Rahim</u>, 2001 WL 1263493 at *13. In the present case, common questions will include: the existence of the alleged practice of charging the Fee; whether any goods or services were provided for

the Fee; the method of informing customers about the Fee and any related representations; whether the Fee is just and reasonable under § 201(b); whether the Fee is discriminatory under § 202; whether deceit or fraud was used in charging the Fee; and whether the contract and fraud claims are cognizable under federal common law.  Rule 23(a)(2) is satisfied.

## C.  Typicality

Rule 23(a)(3) requires that the claims of the class representative be typical of the claims of the class.  The typicality requirement primarily focuses "on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.  'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'"  De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983) (quoting Herbert Newberg, Class Actions ¶ 1115(b) at 185 (1977)).  Accord Retired Chicago Police, 7 F.3d at 596-97; Rahim, 2001 WL 1263493 at *14.  It is only necessary for the claim of the class representative and the claims of the class at large to have the "same essential characteristics;" there may still be differences.  Retired Chicago Police, 7 F.3d at 597 (quoting De La Fuente, 713 F.2d at 232); Rahim, 2001 WL 1263493 at *14; Danis v. USN Communications, Inc., 189 F.R.D. 391, 395 (N.D. Ill. 1999).  Similar legal theories may control despite factual distinctions.  See Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th

Cir. 1992), cert. denied, 506 U.S. 1051 (1993); Clay, 188 F.R.D. at 491-92. "The key to typicality is based on the relationship between the class representative and the class members: are the named plaintiff's interests aligned with those of the proposed class in such a way that the representative, in pursuing his own claims, will also advance the interest of the class?" Rahim, 2001 WL 1263493 at *14. See also In re Bromine Antitrust Litigation, 203 F.R.D. 403, 409 (S.D. Ind. 2001).

Defendant contends that plaintiff is not typical because he did not sign a service contract with defendant and instead took over a corporate account from another person. Defendant does not contend that plaintiff's assignment of the account did not predate the 1995 implementation of the Fee. Neither is there any contention that plaintiff cannot rely on the contract signed by his assignor. Defendant does not suggest, and this court does not foresee, how plaintiff being assigned an account from another customer would materially affect his claim and differentiate him from others.

Defendant also contends that customers were provided sales literature that informed them the Fee would be included in their rates. Such literature, however, would not have predated (except possibly shortly beforehand) the implementation of the Fee. Central to plaintiff's claims is the contention that the Fee was not authorized and then deceptively added. Customers who opened their corporate accounts after the Fee was implemented could not make such a claim, only customers like plaintiff who

initially were not charged the Fee.  Therefore, an appropriate
class definition would limit the class to those who had a
corporate account prior to implementation of the Fee and who
continued to have that account at times when the Fee was charged.
Recognizing that this is an appropriate limitation on the class
definition, the fact that different representations were made to
customers who opened their accounts after implementation does not
matter because such persons would not be members of the class.

Defendant also contends that some people are in different
circumstances because they inquired about the Fee and received
verbal explanations.  Defendants present nothing to support that
a significant number of customers engaged in such communications.
This is not a basis for finding plaintiff's claim to be atypical.

Defendant also contends that, although plaintiff alleges
he received no services for the Fee, larger accounts often had
service representatives assigned to the accounts and therefore
received service for the Fee.  Defendant, however, does not
dispute that the Fee was charged regardless of the services made
available to a particular account.  There does not appear to be a
difference among putative class members as to services received
for the Fee.  Moreover, even if some putative class members
received services for the Fee, it would not preclude plaintiff
from adequately representing the interests of the class.

It is found that plaintiff satisfies the typicality
requirement.

## D. Adequacy of Representation

Rule 23(a)(4) requires that the named representative adequately represent the interests of the class. Three elements must be satisfied: "(1) the class representative cannot have antagonistic or conflicting claims with other members of the class; (2) the class representative must have a 'sufficient interest in the outcome to ensure vigorous advocacy;' (3) counsel for the class representative must be competent, experienced, qualified and generally able to conduct the proposed litigation vigorously." Lifanda v. Elmhurst Dodge, 2001 WL 755189 *3 (N.D. Ill. July 2, 2001) (quoting Chandler v. Southwest Jeep-Eagle, Inc., 162 F.R.D. 302, 308 (N.D. Ill. 1995)).

While there is nothing to indicate that Gilmore has any conflicts of interest with the putative class members or that his interest in the case is insufficient to ensure vigorous representation, it is also true that no specific information is provided about plaintiff beyond the specific allegations of his claims and that he lives in Woodstock, Illinois. Perhaps the lack of any evident conflicts would suffice if it were affirmatively shown that the third element of adequacy were satisfied. See, e.g., Anderson, 199 F.R.D. at 240. The attorneys that have filed appearances on behalf of plaintiff, including the one attorney who generally has signed the pleadings and appeared in court, have provided nothing about their background or litigation experience. In response to defendant's objection that the competency of counsel has not been shown,

plaintiff replies that no such affirmative showing is required. Plaintiff contends the competency of counsel is presumed absent a showing to the contrary. While some cases support such a presumption, the presumption would be inconsistent with plaintiff bearing the burden of proof to show all requirements for class certification and this court having an independent duty to ensure the class is adequately represented. <u>Berger v. Compaq Computer Corp.</u>, 257 F.3d 475, 481-82 (5th Cir. 2001); <u>Gomez v. Illinois State Board of Education</u>, 117 F.R.D. 394, 399 & n.11 (N.D. Ill. 1987). Moreover, in this case, although not providing specific proof to the contrary, defendant does object that the competency of counsel has not been shown. Furthermore, the apparently canned brief in support of class certification (which contains dated citations, does not focus on citing case law from this Circuit, and incorrectly refers to multiple defendants and an insurance contract) does not engender confidence in counsel's qualifications to deal with complex communication rate and service questions. The limited analysis and lack of supporting and pertinent citations contained in plaintiff's brief in opposition to the motion to dismiss also does not engender confidence in counsel's qualifications. <u>Compare</u> <u>Hubler Chevrolet, Inc. v. General Motors Corp.</u>, 193 F.R.D. 574, 578 (S.D. Ind. 2000) (briefs filed by class counsel supported presumption of competency). No presumption of competency of counsel will be applied. Although he will be given another

opportunity to do so, plaintiff has not shown that the
Rule 23(a)(4) requirement is satisfied.

Plaintiff has failed to show that two of the four
Rule 23(a) requirements are satisfied. Failure to satisfy either
of those is a sufficient basis for denying class certification.
No opinion is expressed as to whether Rule 23(b)(3) is otherwise
satisfied. Class certification will be denied at this time. The
court will reconsider the question of class certification, but
only if plaintiff presents such a motion no later than
December 20, 2001. Any such motion must contain an appropriate
class definition, affirmatively show numerosity and the adequacy
of representation, and address the Rule 23(b)(3) question in
light of the claims that remain pending.

## III. MOTION TO DISMISS

### A. Federal Claims

#### 1. Primary Jurisdiction

Under 47 U.S.C. § 207, a person claiming to be damaged by
a provider of cellular telephone services may either complain
before the FCC or bring a suit for damages in federal court, but
not both. See Cahnmann v. Sprint Corp., 133 F.3d 484, 487 (7th
Cir.), cert. denied, 524 U.S. 952 (1998); Digitel, Inc. v. MCI
Worldcom, Inc., 239 F.3d 187, 190 (2d Cir. 2001). Although the
statute leaves it to the plaintiff to choose the forum in which
to proceed and case law has held that the plaintiff may proceed
in only one forum, case law also holds that even though the

plaintiff chooses to proceed in court, the court may still apply
the primary jurisdiction doctrine in order to require the parties
to first obtain an FCC determination of issues within the FCC's
special competence.  Allnet Communication Service, Inc. v.
National Exchange Carrier Association, Inc., 965 F.2d 1118, 1122
(D.C. Cir. 1992); Miranda v. Michigan, 141 F. Supp. 2d 747, 760
(E.D. Mich. 2001); Telecom International America, Ltd. v. AT&T
Corp., 67 F. Supp. 2d 189, 219 (S.D.N.Y. 1999); Unimat, Inc. v.
MCI Telecommunications Corp., 1992 WL 391421 *2 (E.D. Pa.
Dec. 16, 1992).  See also Cahnmann, 133 F.3d at 487 (dictum);
Richman Brothers Records, Inc. v. U.S. Sprint Communications Co.,
953 F.2d 1431, 1435 (3d Cir. 1991), cert. denied, 505 U.S. 1230
(1992) (dictum); Access Telecommunications v. Southwestern Bell
Telephone Co., 137 F.3d 605, 607-09 (8th Cir.), cert. denied, 525
U.S. 962 (1998).

        The Seventh Circuit has noted that the aspect of the
primary jurisdiction doctrine that is sought to be invoked
in the present case is actually a form of abstention and not
jurisdictional in nature.  See Arsberry v. Illinois, 244 F.3d
558, 563 (7th Cir. 2001).  It "allows a federal court to refer a
matter extending beyond the 'conventional experiences of judges'
or 'falling within the realm of administrative discretion' to an
administrative agency with more specialized experience,
expertise, and insight."  Id. (quoting National Communications
Association, Inc. v. American Telephone & Telegraph Co., 46 F.3d
220, 222-23 (2d Cir. 1995) (quoting Far Eastern Conference v.

United States, 342 U.S. 570, 574 (1952))). "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." United States v. Western Pacific Railroad Co., 352 U.S. 59, 64 (1956). Factors and policy issues that have been taken into account in making that determination include: (a) whether the question at issue is within the conventional experience of judges; (b) whether the question at issue involves technical or policy issues within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense. See Ryan v. Chemlawn Corp., 935 F.2d 129, 131 (7th Cir. 1991); National Communications, 46 F.3d at 222-23; Access Telecommunications, 137 F.3d at 608; Sprint Spectrum L.P. v. AT&T Corp., ___ F. Supp. 2d ___, 2001 WL 1231711 *2 (W.D. Mo. July 24, 2001); Madison County Mass Transit v. Hanfelder, 2001 WL 775977 *2 (S.D. Ill. Feb. 7, 2001); AT&T Corp. v. Ameritech Corp., 1998 WL 325242 *1 (N.D. Ill. June 10, 1998); MCI Telecommunications Corp. v. Ameri-Tel, Inc., 852 F. Supp. 659, 663 (N.D. Ill. 1994). Questions of law that do

not require the specialized development of related facts are within a court's expertise and should not be referred to the agency.  Baltimore & Ohio Chicago Terminal Railroad Co. v. Wisconsin Central Ltd., 154 F.3d 404, 411 (7th Cir. 1998), cert. denied, 526 U.S. 1019 (1999); National Communications, 46 F.3d at 223; Hanfelder, 2001 WL 775977 at *3.

Rates for cellular telephone service are not specifically set by the FCC, through tariffs or otherwise, but are instead left to be determined by market forces with court or FCC enforcement available for those rates that violate § 201(b) and other provisions.  Gilmore I, 156 F. Supp. 2d at 923-24.  As to other regulated activity, the FCC regulates rates through tariffs.  Technical issues about tariffs and questions about the reasonableness of tariffs, rates, and filed practices are generally within the particular expertise of the FCC and the regulation of such involves exercising agency discretion.  Thus, issues as to the reasonableness of rates, practices, or tariffs can be referred to the FCC under the primary jurisdiction doctrine.  See Access Telecommunications, 137 F.3d at 608-09; National Communications, 46 F.3d at 223; Sprint Spectrum, ___ F. Supp. 2d at ___, 2001 WL 1231711 at *3-4; Miranda, 141 F. Supp. 2d at 759; Digital Communications Network, Inc. v. AT&T Wireless Services, 63 F. Supp. 2d 1194, 1200 (C.D. Cal. 1999); Ameri-Tel, 852 F. Supp. at 665.  See also Baltimore & Ohio Chicago, 154 F.3d at 410-11 (Interstate Commerce Commission tariff).  That, however, does not make every question related to

a tariff or rate subject to the primary jurisdiction of the FCC. Disputes related to tariffs or rates that do not go to the validity, reasonableness, or technical aspects of the tariff or rate are to be decided by the court, not referred to the FCC under the primary jurisdiction doctrine. See National Communications, 46 F.3d at 223; Access Telecommunications, 137 F.3d at 608. See also Baltimore & Ohio Chicago, 154 F.3d at 411.

In his original complaint, plaintiff denominated some of his claims as contract and fraud claims. See Gilmore I, 156 F. Supp. 2d at 919. Because the contract claim and "no-services fraud claim"[4] raised issues as to the rate being charged, including the services being provided for the amount charged, they were held to be federal claims falling within the purview of the FCA. See Gilmore I, 156 F. Supp. 2d at 924-25. These claims have been restated in Count I of the amended complaint. Now they are denominated, at least in part, as violations of § 201(b) because the Fee is "unjust or unreasonable." However, Count I does not directly attack the reasonableness of the rate; there is no contention that the overall rate is unreasonably high as compared to the overall services being provided. Instead, it is claimed that the rate is too high because plaintiff contracted to pay a lower rate for the same amount of services and defendant

---

[4]See Gilmore I, 156 F. Supp. 2d at 925. The fraud claims contained in the original complaint were found to have two aspects, the no-services fraud claim which fell within the purview of the FCA and the nondisclosure fraud claim which did not. See id. at 924-25.

breached the contract by adding an additional charge (the Fee) without providing any additional service. Also, it is claimed that defendant acted in a fraudulent or deceptive manner in adding the Fee. Plaintiff is again claiming breach of contract and fraud, but this time under federal law instead of state law.

Claims of contract breach, fraud, and deception related to the sale of a service or product are well within the conventional experience of a court. See Nader v. Allegheny Airlines, Inc., 426 U.S. 290, 305-06 (1976). Resolution of these aspects of plaintiff's Count I claim would not require delving into whether the rate itself is reasonable based on the amount and type of services provided for the amount paid. Instead, it would involve the more narrow questions of whether the parties' contract prohibits unilateral rate increases,[5] whether the Fee was added in a deceptive or fraudulent manner, and whether there was reliance and/or materiality. Resolving those questions does not require consideration of matters within the particular expertise of the FCC. Also, there is no contention that other

---

[5]In Lilley v. Paging Network of Ohio, Inc., 100 F. Supp. 2d 1144 (S.D. Ohio 2000), the plaintiff claimed that a paging service acted improperly by unilaterally changing the terms of her contract regarding the calculation of her rates. With virtually no discussion, Lilley, 100 F. Supp. 2d at 1145, holds that such a claim is within the primary jurisdiction of the FCC because it involves a rate challenge. As discussed in the text of today's opinion, not all claims involving rates need be referred to the FCC, including contract claims within a court's conventional experience. To the extent the claim in Lilley was a contract-type claim materially indistinguishable from Gilmore's contract-type claim, this court disagrees with the result in Lilley.

providers of cellular telephone services have added similar administration fees such that it would be necessary for the FCC to establish a uniform rule. Compare Self v. BellSouth Mobility, Inc., 111 F. Supp. 2d 1169 (N.D. Ala. 2000) (whether a provider could properly pass on to a consumer a universal service fee that was, at one time, imposed on the provider by FCC regulation was an issue within the FCC's primary jurisdiction). It will also be necessary to consider whether the contract and fraud claims are cognizable under § 201(b) in that they fall within the statutory definition of "unjust or unreasonable" charges or practice or are otherwise cognizable under the federal common law of the FCA. That, however, is a legal question that is appropriately resolved by a court and does not require the expertise of the FCC. The Count I § 201(b) claims will not be referred to the FCC.

Count I also contains a § 202(a) discrimination claim. Section 202(a) does not prohibit all discrimination in rates, only "unjust or unreasonable discrimination . . . in connection with like communication service." 47 U.S.C. § 202(a). Since a reasonableness standard is involved, discrimination issues are often appropriately referred to the FCC under the primary jurisdiction doctrine. Digital Communications, 63 F. Supp. 2d at 1200. However, rate discrimination issues that do not require discretionary analysis within the FCC's expertise or that have been resolved by the FCC in similar situations involving other parties do not need to be referred to the FCC. See id. at

1200-02. <u>See, e.g.</u>, <u>Miranda</u>, 141 F. Supp. 2d at 761; <u>Telecom International</u>, 67 F. Supp. 2d at 210-11.

A three-step inquiry is applied in analyzing rate discrimination claims under § 202(a): "(1) whether the services are 'like;' (2) if they are 'like,' whether there is a price difference; and (3) if there is a difference, whether it is reasonable." <u>MCI Telecommunications Corp. v. FCC</u>, 917 F.2d 30, 39 (D.C. Cir. 1990). <u>Accord</u> <u>C.F. Communications Corp. v. FCC</u>, 128 F.3d 735, 742 (D.C. Cir. 1997); <u>Competitive Telecommunications Association v. FCC</u>, 998 F.2d 1058, 1061 (D.C. Cir. 1993); <u>Telecom International</u>, 67 F. Supp. 2d at 210. Here, plaintiff's contention is that corporate account customers are charged an additional fee (not charged to noncorporate customers) without being provided any additional services. Defendant contends it does indeed provide additional service for the Fee. Resolving that factual dispute will not require the special expertise of the FCC. If resolved in defendant's favor, no additional analysis will be necessary; the services will not be like and the claim will fail. If this factual issue is resolved in plaintiff's favor, then resolution of the § 202(a) claim would require determining whether the corporate and noncorporate accounts are otherwise alike and, if so, determining whether the differences are reasonable. Those would be determinations for which the FCC's expertise would likely be useful. However, resolving the aforementioned factual dispute in plaintiff's favor may instead lead to success (or settlement) on one of plaintiff's other

claims[6] and it still may be unnecessary to resolve the additional steps of the rate discrimination inquiry.

If the rate discrimination claim was the only claim in this case and clearly required reaching the second two steps of the inquiry, this would likely be an appropriate case to refer to the FCC under the primary jurisdiction doctrine. However, the § 202(a) claim is a secondary claim for which the merits may not have to be reached; is possibly resolvable on a factual issue that does not implicate the FCC's expertise; and does not involve an issue of general application that calls for a uniform decision. Taking those considerations into account, judicial economy does not favor referring this one claim to the FCC and thereby substantially delaying the resolution of the other claims that do not need to be referred to the FCC. At this time, the § 202(a) claim will not be referred to the FCC for resolution.

### 2. Section 201(b) Merits

Defendant contends the § 201(b) claims should be dismissed because they are essentially contract and fraud claims and therefore do not state violations of the FCA, but instead are preempted state law claims. Under defendant's theory, any state law claim for breach of contract or fraud is preempted and federal law recognizes no similar claim. If plaintiff were correct, cellular telephone service contracts would be

---

[6]The § 202(a) claim does not appear to be one of plaintiff's primary claims. No similar claim was included in the original complaint.

meaningless pieces of paper and providers would be free to breach their contracts and engage in fraudulent conduct because there would be no enforcement mechanism to prevent it, unless the same conduct independently constituted an unjust or unreasonable rate or practice.

Defendant's contention fails to acknowledge the nature of complete federal preemption. When there is complete preemption, "[f]ederal law does not merely create a right; it occupies the whole field, displacing state law." Cahnmann, 133 F.3d at 489. See also Bastien v. AT&T Wireless Services, Inc., 205 F.3d 983, 986-87 (7th Cir. 2000). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987). Of course, federal law does not necessarily provide the same remedies as would have been available under state law. Congress, however, could not have intended that cellular service providers would be free to ignore their contracts and make fraudulent representations. Either a breach of contract[7] or fraudulent conduct is unjust or unreasonable and therefore supports a cognizable claim under

---

[7]It must be kept in mind that the cellular services provided by defendant are not governed by tariffs. The present case is distinguishable from those cases where the parties' contract is the tariff itself. See Cahnmann, 133 F.3d at 488. In cases involving tariffs, there is no federal common law contract claim separate from direct enforcement of the tariff. See id. at 488-89.

§ 201(b), or such claims are separately cognizable under federal common law, which must be construed consistently with the statutory provisions. See Ivy Broadcasting Co. v. American Telephone & Telegraph Co., 391 F.2d 486, 490-92 (2d Cir. 1968); Nordlicht v. New York Telephone Co., 799 F.2d 859, 864 (2d Cir. 1986), cert. denied, 479 U.S. 1055 (1987);[8] In re Comcast Cellular Telecommunications Litigation, 949 F. Supp. 1193, 1200-05 (E.D. Pa. 1996); Thermalcraft, Inc. v. U.S. Sprint Communications Co. Ltd. Partnership, 779 F. Supp. 1039, 1040-42 (W.D. Mo. 1991); Mellman v. Sprint Communications Co., 975 F. Supp. 1458, 1463 (N.D. Fla. 1996). See also Cahnmann, 133 F.3d at 488 ("A tariff filed with a federal agency is the equivalent of a federal regulation, . . ., and so a suit to enforce it, and even more clearly a suit to invalidate it as unreasonable under federal law (both types of suit being comprehended in the plaintiff's contract count), arise under federal law.").[9] For present purposes, it is

---

[8]More recently, the Second Circuit held that the preemptive force of the FCA is not as broad as had been held in Ivy and Nordlicht. Marcus v. AT&T Corp., 138 F.3d 46, 54-55 (2d Cir. 1998). See also Corporate Housing Systems, Inc. v. Cable & Wireless, Inc., 12 F. Supp. 2d 688, 691-93 (N.D. Ohio 1998). This does not overrule the Ivy and Nordlicht holdings regarding applying federal common law; it only overrules whether particular state law claims are preempted and replaced by federal common law. As is expressly noted in Marcus, 138 F.3d at 55, the Seventh Circuit's view of the preemptive sweep of the FCA is broader than the Second Circuit's current view. See Cahnmann, supra; Bastien, supra. As was held in Gilmore I, 156 F. Supp. 2d at 924-25, the contract and no-services fraud claims raised by Gilmore are completely preempted by the FCA.

[9]Cahnmann does not go on to delineate the parameters of the federal claim because the plaintiff in that case chose to disclaim any intention to proceed on a federal claim and instead

sufficient to hold that the claims are cognizable as federal claims; defendant makes no argument regarding the specific elements of such claims.

Defendant contends that the fraud allegations of the amended complaint are insufficient to satisfy the pleading requirements of Fed. R. Civ. P. 9(b). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The circumstances of fraud or mistake generally include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997). A complaint must outline the alleged misrepresentations and reasonably notify the defendant of the specifics of the alleged fraudulent activity. Lachmund v. ADM Investor Services Inc., 191 F.3d 777, 782 (7th Cir. 1999). Fair notice is the most basic consideration. Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777-78 (7th Cir. 1994).

Plaintiff alleges that the improper representations consisted of sending monthly bills simply identifying the Fee as a "Corporate Account Administrative Fee" without any further explanation. Plaintiff specifies that this representation was false or misleading because (a) no administrative services were

chose to stand on whether his state law claims were preempted. See Cahnmann, 133 F.3d at 489-90.

provided for the fee, (b) defendant omitted specifically identifying the new Fee as a rate increase, and (c) defendant omitted noting that the Fee was not authorized under the contract between the parties.[10]  This sufficiently identifies the misrepresentations, their content, and the time and method of communication.  Where there is a single corporate defendant and the misrepresentations are sent in mass mailings that do not themselves identify the author of the document, it is not required that the allegations identify the specific person or persons at the corporate defendant who authored the document or were responsible for the document's contents.  Cf. United States ex rel. Roby v. Boeing Co., 184 F.R.D. 107, 110-11 (S.D. Ohio 1998); Smith v. MCI Telecommunications Corp., 678 F. Supp. 823, 825 (D. Kan. 1987).  Defendant complains that plaintiff has not identified any affirmative misrepresentations or pertinent conversations plaintiff may have had with employees of defendant. Plaintiff, however, need not allege facts that are not pertinent to the claimed fraud.  He is not alleging there were any affirmative misrepresentations beyond the name of the Fee contained on the monthly bills and he does not allege there were any fraudulent oral representations.  Plaintiff has made clear the statements that he contends were fraudulent and why. Defendant has sufficient notice to prepare its responsive

---

[10]Whether the last claimed omission is properly characterized as a fraud claim and not a claim for breach of contract need not be decided.

pleading and otherwise defend against the claims.  The amended
complaint satisfies Rule 9(b).

### 3.  Section 202(a) Merits

Defendant contends the § 202(a) claim fails because
"illogical" in that it somehow is circular and contradictory.[11]
The § 202(a) claim is not contradictory.  Plaintiff alleges that
corporate customers were charged a fee not charged to
noncorporate customers even though the service provided to both
types of customers was essentially the same.  Plaintiff also
alleges that no reasonable basis existed for charging the
additional fee.  Plaintiff has alleged all the elements of a
§ 202(a) rate discrimination claim.  See C.F. Communications, 128
F.3d at 742; MCI Telecommunications, 917 F.2d at 39; Competitive
Telecommunications, 998 F.2d at 1061-62.

## B.  Supplemental State Law Claims

In Gilmore I, 156 F. Supp. 2d at 924-25, it was
recognized that plaintiff's original complaint contained two

---

[11]In its reply, defendant also contends that the § 202(a)
claim must fail because corporate and noncorporate accounts are
not like services.  Since raised for the first time in
defendant's reply, this argument will not be considered.  See
Snider v. Consolidation Coal Co., 973 F. 2d 555, 561 (7th Cir.
1992), cert. denied, 506 U.S. 1054 (1993); Roberts v. Board of
Education, 25 F. Supp. 2d 866, 868 n.3 (N.D. Ill. 1998);
Jackson v. Doria, 851 F. Supp. 288, 290 n.1 (N.D. Ill. 1994).
Also, it will not be considered because it relies on a document
outside the pleadings to attempt to show that corporate and
noncorporate accounts of defendant receive different services.
Such additional facts cannot be considered on a Rule 12(b)(6)
motion to dismiss.  Fed. R .Civ. P. 12(b) (last sentence);
Ribando v. United Airlines, Inc., 200 F.3d 507, 510 (7th Cir.
1999); Levenstein v. Salafsky, 164 F.3d 345, 347 (7th Cir. 1998).

types of fraud claims, one of which was preempted and one which was not. The nonpreempted claim was described as follows:

> To the extent plaintiff simply claims that defendant added the Fee while attempting to hide the increase in charges (hereinafter the "nondisclosure fraud claim"),[10] that is a claim like the one in [In re Long Distance Telecommunications Litigation, 831 F.3d 627, 633-34 (6th Cir. 1987) (approvingly cited in Cahnmann, 133 F.3d at 488)]. Success on the nondisclosure fraud claim would not require proof that the Fee was unreasonably high or unjustified in light of any new services provided in return.

> _____
> [10]It is implied in the complaint that the Fee was made to look like a tax or administrative charge that any cellular service provider would charge in addition to the advertised rate charged for the cellular service.

Gilmore, 156 F. Supp. 2d at 924-25.

In contrast, the original complaint also included the preempted

> allegation that the Fee involved deception or a misrepresentation in that no additional goods or services were received in return for the new Fee (hereinafter the "no-services fraud claim"). The no-services fraud claim would require proof that any services provided in return were not worth the amount of the Fee. As previously discussed, that is a rate challenge that falls within the purview of the FCA.

Id. at 925.

Defendant contends Counts II and III of the amended complaint are preempted because they allege a no-services fraud claim, not a nondisclosure fraud claim. Virtually every paragraph of the fraud allegations that refers to a

misrepresentation alleges that defendant acted deceptively by charging a Fee for which no goods or services were provided. See Am. Compl. ¶¶ 19 (incorporating ¶¶ 11 & 12), 22, 27, 28, 29. It is also alleged that defendant misrepresented that the contract authorized charging the Fee. See id. ¶¶ 19 (incorporating ¶ 10), 22, 29. Plaintiff also makes the following allegations. "Defendant did not impose this Fee to defray legitimate additional administrative costs--indeed no administrative goods or services were provided. Instead, Defendant imposed the Fee knowingly and with the specific intent of obtaining a higher price for its cellular services without appearing to raise its rates. Defendant has provided no further description or explanation of this Fee and has never informed its customers that what it has misleadingly labeled 'Corporate Account Administrative Fee' is really a rate increase in disguise." Id. ¶ 10 (incorporated in ¶ 19). "Defendant's monthly bills omit the material fact that what they label a 'Corporate Account Administration Fee' is really a disguised rate increase." Id. ¶ 27. "The Defendant, by certain of its officers, knew that no additional administrative goods or services were being provided to customers, and instead imposed the Fee for the sole purpose of deceiving its customers and obtaining more money for its cellular phone services without appearing to raise its rates." Id. ¶ 28.

Obviously, the allegations that defendant misrepresented that no goods or services were received for the fees is a no-services fraud claim which this court has held is preempted by

the FCA.  The claim based on defendant misrepresenting that the contract authorized defendant charging the Fee is preempted just as the breach of contract claim that the Fee was not authorized is preempted.  See Gilmore I, 156 F. Supp. 2d at 924.  Allegations that the Fee was disguised could be a nondisclosure fraud claim that would not be preempted.  There is, however, no allegation that the Fee was disguised as a tax or administrative charge that all cellular service providers would have to charge, nor is there any allegation that defendant represented other providers charged similar fees, nor is there any allegation that the Fee was placed on the monthly bill in a manner intended to avoid detection.  Instead, it is alleged that the Fee was disguised by making it appear to be a fee for services that were not actually provided.  Thus, even the express references to a disguised rate increase contained in ¶¶ 10, 27, and 28 are stated as no-services fraud claims.

Counts II and III are no-services fraud claims that are preempted by the FCA.  Since the same allegations are otherwise raised as federal claims in Count I, there is no need to construe Counts II and III as federal claims.  The state law claims contained in Counts II and III will be dismissed as preempted.

IT IS THEREFORE ORDERED that plaintiff's motion for class certification [15-1] is denied.  Defendant's motion to dismiss first amended complaint [16-1] is granted in part and denied in part.  Counts II and III of the amended complaint are dismissed.  Within two weeks, defendant shall answer the remaining

allegations of the amended complaint. Any renewed motion for class certification must be filed, with supporting documents, and presented no later than December 20, 2001. All discovery is to be completed by February 26, 2002. Status hearing set for December 20, 2001 at 11:00 a.m.

ENTER:

William T. Hort
UNITED STATES DISTRICT JUDGE

DATED: NOVEMBER 29 , 2001

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 1810 | **DATE** | 11/29/2001 |
| **CASE TITLE** | Chgo. District Council of Carpenters vs. Royal Builders, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Defendant's motion to compel production of bond form and other relief is denied without prejudice for the reasons stated in open court.  Stanley E. Niew's oral motion for leave to file his appearance on behalf of the defendant is granted.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | **Document Number** |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | NOV 3 0 2001 date docketed | 24 |
| ✓ | Docketing to mail notices. | 15 docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| RO | courtroom deputy's initials | date mailed notice | |
| | | 01 NOV 29 PM 12: 28 | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |