

Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | SITTING JUDGE IF OTHER THAN ASSIGNED JUDGE | |
|---|---|---|---|
| CASE NUMBER | 01 C 2900 | DATE | APRIL 5, 2002 |
| CASE TITLE | BRUCE GILMORE, etc. v. SOUTHWESTERN BELL MOBILE SYSTEMS, L.L.C. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ **Status hearing set for May 1, 2002 at 11:00 a.m.**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]
Plaintiff's renewed motion for class certification [26-1] is denied.

(11) [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 | Document Number |
| | No notices required. | | number of notices | |
| ✔ | Notices mailed by judge's staff. | | APR 08 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | 42 |
| | Copy to judge/magistrate judge. | 02 APR -5 PM 4:34 | APRIL 5, 2002 date mailed notice | |
| cw | courtroom deputy's initials | FILED-FD-10 Date/time received in central Clerk's Office | mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRUCE GILMORE, individually and )
on behalf of all other people )
similarly situated, )
 )
        Plaintiff, )
 )
v. )   No. 01 C 2900
 )
SOUTHWESTERN BELL MOBILE )
SYSTEMS, L.L.C., a Delaware )
limited liability company, )
 )
        Defendant. )

DOCKETED
APR 8 2002

## MEMORANDUM OPINION AND ORDER

In this case, named plaintiff Bruce Gilmore alleges, on behalf of himself and a putative class, that defendant Southwestern Bell Mobile Systems, L.L.C.[1] has violated the Federal Communications Act ("FCA"), specifically 47 U.S.C. §§ 201 and 202, by charging an allegedly improper "Corporate Account Administration Fee" (the "Fee") for cellular telephone services that it provides. It has previously been held that named plaintiff sufficiently alleges a grounds for relief on his FCA claims. See Gilmore v. Southwestern Bell Mobile Bell Systems, L.L.C., 2001 WL 1539157 *6-10 (N.D. Ill. Nov. 30, 2001)

---

[1] Defendant presently does business as Cingular Wireless. It formerly did business as Cellular One of Illinois.

("Gilmore II"). Defendant first imposed the Fee in April 1995 bills. It is claimed that defendant breached the parties' contract by unilaterally raising the rate for cellular telephone use by charging the Fee without providing any additional services. It is also claimed defendant used fraud and deception in adding the Fee to its charges for cellular telephone service. Gilmore II, 2001 WL 1539157 at *9, left open the question of whether these two claims should be considered § 201(b) claims based on unjust or unreasonable practices or charges or are instead contract and fraud claims under federal common law. It is also claimed that the Fee constitutes rate discrimination in violation of § 202(a) in that noncorporate customers were not charged the Fee.[2]

In Gilmore II, class certification was denied in that named plaintiff did not show numerosity, see id. at *3, or that he was an adequate class representative, particularly in that he failed to show the qualifications of his counsel, see id. at *5. It was not found that these two requirements could not be satisfied, only that named plaintiff had failed to meet his burden of providing support showing they were satisfied. It was found that the commonality requirement of Fed. R. Civ. P.

---

[2] In his class certification briefs, named plaintiff also indicates that he contends there was unlawful rate discrimination in that many customers who sufficiently objected were not charged the Fee.

23(a)(2) and the typicality requirement of Rule 23(a)(3) were satisfied. Gilmore II, 2001 WL 1539157 at *4-5. No opinion was expressed as to whether the predominance requirement of Rule 23(b)(3) was satisfied. Since it was possible that numerosity and adequacy of representation could be shown, named plaintiff was provided with a further opportunity to show that the case is appropriate for class certification. See id. at *6. In Gilmore II, it was also held that any possible class had to be limited to those customers of defendant who had a corporate account before the Fee was imposed in April 1995 and continued to have the account after the Fee was imposed.[3] See id. at *4. Named plaintiff has renewed his motion for class certification.

In response to the renewed motion for class certification, defendant again contends that Gilmore is an atypical and inadequate representative because of questions regarding Gilmore acquiring the account. Previously, defendant contended the account had been opened by someone else, but did not dispute that the account had been assigned to Gilmore prior to April 1995. Now, defendant contends Gilmore did not have cellular service in his name prior to April 1995. Gilmore contends this issue cannot be raised at this time because it was already considered and

---

[3]In light of current evidence that defendant did not charge the Fee to many customers who complained about it, the definition would have to be further clarified to include only those continuing customers who actually paid the Fee.

rejected in Gilmore II, 2001 WL 1539157 at *4. However, on the present motion, this issue must be considered in light of the additional evidence that has been disclosed in discovery since the time of the Gilmore II ruling. As was held in Gilmore II, 2001 WL 1539157 at *2, "the court has an independent duty to scrutinize the appropriateness of class certification; the court is not limited to arguments made by a party opposing certification." If there is pertinent evidence that defendant failed to or could not present previously, this court will not ignore it. Similarly, possible issues regarding communications with some customers, see id. at *5, may have to be reconsidered in light of additional evidence (provided by named plaintiff) that a large number of customers did contact defendant to question the Fee.

As to numerosity, named plaintiff provides information about defendant's customer base that indicates the putative class probably numbers in the thousands. With his "rejoinder" brief, named plaintiff also provides an affidavit of defendant's former director of corporate sales who estimates that, at the time the Fee was being imposed, there were 120,000 to 180,000 corporate account holders. He also estimates that approximately 25% of them complained about the Fee and that the Fee was not charged to approximately 75% of those who complained. If the Fee was not imposed on a particular customer, he or she would not be an

appropriate member of the class. Therefore the class is estimated to include approximately 97,500 to 146,250 customers.[4] Clearly the class is large enough to satisfy the numerosity requirement.

Defendant raises the question of when Gilmore was actually a customer and if he is the appropriate party in interest regarding the account underlying his individual claim. The parties have provided Gilmore's deposition testimony, billing records for the pertinent cellular service account he used, and certain contracts for the cellular service. The account at issue was opened in October 1993. The contract was signed by Linda Weigand, who is Gilmore's sister-in-law. From the beginning, however, the cellular telephone was used by Gilmore. Gilmore testified that Weigand obtained the telephone for him or his wife and told them that it was obtained through a plan that allowed telephones to be obtained for employees of Weigand's company and their relatives. No documents are provided to verify the terms of the promotion, including whether it was limited to telephones for employees or whether it permitted telephones to be provided to relatives. It appears that the telephones could be issued directly to individuals, not just to the individual on behalf of

---

[4]The affidavit refers to "corporate account holders." It is unclear whether a single corporate account could include multiple customers. Nor is it clear whether a significant number of customers had more than one account.

the company. The initial contract lists Weigand "attn: name or c/o" Meridian Leasing (Weigand's employer), but with the billing address being Gilmore's residence. The provision just above the signature line grants permission to check Weigand's and the company's credit and states: "I am making this application IN MY INDIVIDUAL CAPACITY AND ON BEHALF OF THE ENTITY I REPRESENT, IF ANY, . . . ." Most of the terms of the contract are on the reverse side. All that has been found is a copy of the front side of the contract Weigand signed. However, defendant provides a blank copy of the contract form it used in 1993, which includes a provision that the contract could not be assigned to another customer without the express, prior written consent of defendant. No document confirming an assignment has been provided.

Although the contract was in Weigand's name, from the beginning the bills were addressed to "Linda Weigand/Meridian Leasing, attn Bruce Gillmore [sic]," at Gilmore's home address. The bills were paid by Gilmore. That continued to be the situation as of April 1995 when the Fee was first imposed. In 1996, when Gilmore moved to a new residence, the bills continued to be addressed to Weigand/Meridian Leasing, attn: Gillmore at Gilmore's new home address. Beginning in September 1998, the bills were addressed to:

    Linda Weigan/Meridian Leasing
    Bank 1 Investment Management G
    atn:Charles W. Tramel,IL1-4240

at Bank 1 Investment Management's address. Tramel was Gilmore's accountant. During this time period, the bills were being processed by Tramel's office, but paid out of funds belonging to Gilmore that Tramel managed.[5] As of December 1999, the bills were being sent in Gilmore's name only (correctly spelled) at his home address.

In January 1998, Weigand signed an addendum to the contract for the pertinent cellular service account. A new telephone was issued and Weigand agreed to a 36-month extension of the term of the contract. The customer name on the addendum was "Linda Weigan [sic]." In March 2001, Gilmore himself signed an addendum to the contract, extending the contract for 24 additional months, obtaining a new telephone, and selecting a new rate plan.

From 1993 through at least 2001, the same telephone number was assigned to the pertinent cellular service account. From April 1995 through February 26, 2001, the pertinent account was charged the Fee. When Gilmore signed a new contract in March 2001, he switched to a "home" rate plan effective at the beginning of the then-current billing period, February 27, 2001. The disputed Fee was not charged under that plan.

---

[5]Gilmore testified that he is uncertain as to the precise nature of the funds. It may have been paid out of a trust for which Gilmore is the beneficiary, but he did not know the particular arrangement.

The evidence indicates that Gilmore (or his immediate family) were always the ones using the pertinent cellular service, not Weigand. The bills were apparently paid out of Gilmore's funds. A question exists, however, as to whether Gilmore is the appropriate party in interest for any breach of contract or fraud claim related to the account. Arguably, as the one who signed the contract, Weigand was the real party in interest until Gilmore signed a contract in 2001, or at least until December 1999 when the name on the account was changed to Gilmore. Gilmore contends he was the <u>de facto</u> account holder from the beginning and therefore the proper party in interest from the beginning. To the extent the contract prohibited an assignment without defendant's express, written approval, Gilmore contends defendant has waived any such contention by acquiescing in the assignment, but this position is far from clear.

Where the named plaintiff's claim may fail on grounds unique to the named plaintiff or a small subset of the plaintiff class, the typicality requirement for class certification may not be satisfied. <u>Koos v. First National Bank of Peoria</u>, 496 F.2d 1162, 1164-65 (7th Cir. 1974); <u>Hardy v. City Optical Inc.</u>, 39 F.3d 765, 770 (7th Cir. 1994); <u>J.H. Cohn & Co. v. American Appraisal Associates, Inc.</u>, 628 F.2d 994, 998-99 (7th Cir. 1980); <u>Miller v. Spring Valley Properties</u>, 202 F.R.D. 244, 249-50 (C.D. Ill. 2001); <u>Danis v. USN Communications, Inc.</u>, 189 F.R.D. 391,

395 (N.D. Ill. 1999); Honorable v. The Easy Life Real Estate System, Inc., 182 F.R.D. 553, 560 (N.D. Ill. 1998). The fear is that the named plaintiff may become distracted by the aspect of his or her claim that is unique to the named plaintiff. Cohn, 628 F.2d at 1199; Koos, 496 F.2d at 1165; Danis, 189 F.R.D. at 395. The merits of the issue unique to the named plaintiff generally are not to be resolved in ruling on class certification. It is sufficient that it is arguable that the named plaintiff's individual claim would be defeated. Koos, 496 F.2d at 1164; Cohn, 628 F.2d at 998-99; Miller, 202 F.R.D. at 249. Still, class certification will only be defeated if the unique and arguably dispositive issue is likely to distract the named plaintiff because it is predictable that the issue will usurp a significant portion of the named plaintiff's time and energy. Koos, 496 F.2d at 1164-65; Cohn, 628 F.2d at 999; Danis, 189 F.R.D. at 395; Miller, 202 F.R.D. at 250; Honorable, 182 F.R.D. at 560.

Whether Gilmore was in a contractual relationship with defendant, or possibly has a claim as a third-party beneficiary, is an issue that may go to his standing to sue defendant. A named plaintiff who lacks standing to sue is not an appropriate class representative. See Walters v. Edgar, 163 F.3d 430, 432 (7th Cir. 1998); Ball v. Nationscredit Financial Services Corp., 207 B.R. 869, 870 n.1 (N.D. Ill. 1997); Katz v. Comdisco, Inc.,

117 F.R.D. 403, 407 (N.D. Ill. 1987). Where a named plaintiff loses standing <u>after</u> the case is filed, he or she may be replaced by a member of the putative class, either before or after the case is certified as a class action. <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 51-52 (1991); <u>Walters</u>, 163 F.2d at 432. However, even though the named plaintiff may be replaced after the suit is filed, there is no case to begin with if the named plaintiff lacked standing at the time the case was initially filed. <u>Walters</u>, 163 F.3d at 432-33. Therefore, whether named plaintiff had standing at the commencement of this suit is a crucial issue. In the present case, a substantial issue exists as to whether Gilmore had standing to bring his individual claims. Named plaintiff does not cite any case law clearly establishing that the facts before the court support that he has standing. It is probable that the issue of standing will be a substantial issue that will take up significant time. Therefore, it is inappropriate to certify a class with Gilmore as the class representative. <u>Cf.</u> <u>Katz</u>, 117 F.R.D. at 407.

It is found that Gilmore is not a typical and adequate class representative.[6] The renewed motion for class certification will be denied. A status hearing will be held on

---

[6] No opinion is expressed as to whether class counsel is adequate or whether the predominance requirement of Rule 23(b)(3) would be satisfied.

May 1, 2002 at 11:00 a.m. At that time, plaintiff's previously filed motion to compel discovery will be considered.

IT IS THEREFORE ORDERED that named plaintiff's renewed motion for class certification [26-1] is denied. Status hearing set for May 1, 2002 at 11:00 a.m.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: APRIL 5, 2002